RTP:NR
F. #2019R00933

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

MARUF ALAM,
    also known as "Mitu Maruf,"

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

TO BE FILED UNDER SEAL

19-M-710

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF ARREST WARRANT

(18 U.S.C. § 1343)

EASTERN DISTRICT OF NEW YORK, SS:

          MATTHEW BRIGHAM, being duly sworn, deposes and states that he is a

Special Agent with the Federal Bureau of Investigation, duly appointed according to law and

acting as such.

          In or about and between January 2012 and January 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant MARUF ALAM, also known as "Mitu Maruf," did knowingly and intentionally

devise a scheme and artifice to defraud the Campaign Committee (as defined below) and

donors thereto, and to obtain money and property from them by means of one or more

materially false and fraudulent pretenses, representations and promises, and for the purpose

of executing such scheme and artifice, did transmit and cause to be transmitted, by means of

wire communications in interstate commerce, writings, to wit: electronic mail messages attaching false campaign finance disclosure reports.

(Title 18, United States Code, Section 1343)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent with the FBI since 2015.   As a Special Agent, I have personally participated in numerous investigations and arrests, the debriefing of informants, and the execution of search warrants, including searches of premises and electronic devices.   As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.   I am familiar with the facts and circumstances of the investigation from, among other things: (a) my personal participation in this investigation, (b) reports made to me by other law enforcement authorities and (c) records and documents obtained from queries of law enforcement and public information databases and the issuance of grand jury subpoenas.

A. Background

2.      The FBI is investigating a scheme involving the improper use of campaign funds and the submission of false campaign disclosures to New York State

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

government authorities, namely the New York State Board of Elections ("NYSBOE"), to conceal the improper use of the funds and to allow the scheme to continue undetected.

      3.     More specifically, as set forth herein, the investigation has revealed that the defendant MARUF ALAM electronically submitted false campaign finance disclosure reports (the "Disclosure Reports") to the NYSBOE on behalf of a campaign committee (the "Campaign Committee").   The Campaign Committee supported various campaigns of a New York State Assemblyperson (the "Assemblyperson").   In multiple Disclosure Reports, ALAM failed to disclose large cash withdrawals, checks written for his benefit and other improper expenditures that he made from the Campaign Committee's bank account ("the Campaign Account").   These false Disclosure Reports were designed to conceal ALAM's fraud from the NYSBOE and to defraud contributors to the Campaign Committee.

B. The Defendant

      4.     Since in or about June 2008, the defendant MARUF ALAM has been an employee of the New York State Assembly, employed in the office of the Assemblyperson.[2]   New York State payroll records identify ALAM's home address as a location in Brooklyn, New York (the "Brooklyn Residence").[3]

C. The Campaign Committee

      5.     The Campaign Committee is a campaign committee initially registered with the NYSBOE on June 9, 2010, designed to support the Assemblyperson.

---

[2]    Payroll records and other correspondence obtained as part of the investigation reflect that the defendant MARUF ALAM served in various capacities for the Assemblyperson, including as "Chief of Staff."

[3]    International travel records reflect that the defendant MARUF ALAM's middle name is "Mitu."   Based on the investigation, I am aware that ALAM often refers to himself as "Mitu."

6.      NYSBOE records reflect a Gmail electronic mail account hosted by Google, Inc., associated with the Campaign Committee ("Campaign Email Account 1"). Campaign Email Account 1 was created on September 24, 2005 and subscribed to by the defendant MARUF ALAM.   The Campaign Committee further identified its mailing address as ALAM's Brooklyn Residence.

D.  The Disclosure Reports

7.      In connection with this investigation, I have consulted with NYSBOE staff.   They advised me that, pursuant to New York State law, the Campaign Committee was required to make periodic filings with the NYSBOE in which, among other things, the Campaign Committee was required to accurately disclose contributions received and expenditures made by the Campaign Committee.   Further, the Campaign Committee's obligation to make accurate disclosure filings is ongoing.   Accordingly, to the extent the Campaign Committee failed to make an accurate filing covering a certain period, the Campaign Committee has a continuing obligation to amend its filings to correct any prior inaccuracies.   Failure to make such required disclosures could result in, among other things, civil and criminal penalties.

8.      On or about March 27, 2019, FBI agents interviewed the Assemblyperson.   The Assemblyperson stated, in sum, substance and part, that the defendant MARUF ALAM acted as the "treasurer" for two campaign accounts, including the Campaign Account, and that ALAM did so on a volunteer basis.   The Assemblyperson further indicated that ALAM was responsible for filing the Disclosure Reports for the Campaign Committee.   The Assemblyperson further stated that the Assemblyperson had not

authorized ALAM (or anyone else) to withdraw approximately $80,000 in cash from the

Campaign Account between January 2012 and April 2018.

        9.      As part of the investigation, I have identified instances in which the

Campaign Committee electronically submitted Disclosure Reports to the NYSBOE via

Campaign Email Account 1 and via a second Gmail electronic mail account hosted by

Google, Inc. ("Campaign Email Account 2")[4]:

    a.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the six months prior to the filing was emailed from Campaign Account 1 to the NYSBOE on or about January 18, 2012;

    b.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the six months prior to the filing was emailed from Campaign Account 1 to the NYSBOE on or about July 18, 2012;

    c.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the 32 days prior to the 2012 general election was emailed from Campaign Account 1 to the NYSBOE on or about October 16, 2012;

    d.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the six months prior to the filing was emailed from Campaign Account 1 to the NYSBOE on or about July 16, 2013;

    e.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the period from January through July 2017 was emailed from Campaign Account 2 to the NYSBOE on or about January 22, 2018;

    f.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the six months prior to the filing was emailed from Campaign Account 2 to the NYSBOE on or about January 22, 2018;[5]

---

[4]    Campaign Email Account 2 was created on May 24, 2017.   The "recovery email address" associated with this account is Campaign Email Account 1.   Based on my communication with other law enforcement agents, I am aware that Google, Inc. does not maintain computer servers for the "Gmail" email exchange in State of New York and thus any email sent through Google's Gmail system traveled interstate if sent to or from a location in New York State.

[5]    The January 22, 2018 email attached two Disclosure Reports to the same transmission

     g.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the six months prior to the filing was emailed from Campaign Account 2 to the NYSBOE on or about July 19, 2018;

     h.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the 32 days prior to the 2018 general election was emailed from Campaign Account 2 to the NYSBOE on or about December 4, 2018;[6] and

     i.  A Disclosure Report for the Campaign Committee covering contributions and expenses for the 27 days after the 2018 general election was emailed from Campaign Account 2 to the NYSBOE on or about December 4, 2018.

9.     Additionally, the Campaign Committee filed "Non Activity Reports" via an electronic portal on or about January 21, 2014, January 19, 2017, December 4, 2018 and January 23, 2019.   The NYSBOE system permits such reports to be filed by a representative of the Campaign Committee using a personal identification number via a web-based portal and does not require an email transmission.

10.     Based on my investigation, I am aware that the Campaign Committee did not file any required Disclosure Reports in 2015 or 2016.   Similarly, I am also aware that the Campaign Committee failed to file Disclosure Reports in July 2014 and failed to file required Disclosure Reports either before or after the 2014 primary and general elections.[7]

E.  The Campaign Bank Account

11.     In connection with the investigation, I have reviewed bank records for the Campaign Account, which was opened on or about June 7, 2010.   Opening documents for

---

email.

[6]     The December 4, 2018 email attached two Disclosure Reports to the same transmission email.

[7]     NYSBOE staff has informed FBI agents that even where a campaign committee has not received contributions or incurred expenses, it is required to file a "Statement of No Activity."   Here, the Campaign Committee repeatedly failed to file any such report.

the Campaign Account identify the Secretary Treasurer of the Campaign Committee as the defendant "Mitu Maruf."

12.     In addition, the documents identified and the administrator of the Campaign Account as Jane Doe No. 1, who is identified in NYSBOE filings as the Campaign Committee's "Treasurer."   On or about March 27, 2019, I was present at an interview of Jane Doe No. 1 at the Brooklyn Residence.   During the interview, Jane Doe No. 1 stated, in sum, substance and part, that she had a familial relationship with MARUF ALAM and had opened the Campaign Account at his request.   She further stated that she had never used a debit card associated with the Campaign Account and had not withdrawn funds at ALAM's request.   Jane Doe No. 1 also stated that she had never engaged in political fundraising nor had she done work for any political event.   The address associated with the Campaign Account is the defendant's Brooklyn Residence.   Records for the Campaign Account reflect that a debit card associated with the Campaign Account was mailed to the defendant's Brooklyn Residence on or about May 15, 2018.

13.     As part of the investigation, I have reviewed records for the Campaign Account from approximately January 2012 through January 2019 and compared the Disclosure Reports submitted to the NYSBOE with the Campaign Account records.   As part of this review, I have identified multiple contributions made to, and expenses incurred by, the Campaign Committee.   Based on this review, as well as my review of the Campaign Committee's Disclosure Reports to the NYSBOE, I have identified multiple instances in which the Campaign Committee failed to accurately disclose to the NYSBOE both contributions received and expenses incurred.

14.     For example, between January 14, 2012 and October 1, 2012, the Campaign Committee reported more than $5,700 in expenditures to the NYSBOE.   The Campaign Account records reflect that during that same period, the Campaign Committee actually incurred more than $38,000 in expenditures, including more than $34,000 in cash withdrawals.   For example:

a.   On January 18, 2012, the Campaign Committee filed a Disclosure Report that disclosed $2,149.00 in campaign expenditures.   The Campaign Committee did not disclose more than $1,700 in ATM withdrawals reflected in the records of the Campaign Account that occurred between January 1 and January 17, 2012 – including $560 of cash withdrawals made on January 17, 2012 – one day before the Campaign Committee filing;[8]

b.   On July 18, 2012, the Campaign Committee filed a Disclosure Report that disclosed $5,295.13 in campaign expenditures between February and June 2012.   The Campaign Committee did not disclose: (i) approximately $9,000 in ATM withdrawals reflected in the records for the Campaign Account that occurred in March, April, May and June 2012; (ii) a $12,500 cash withdrawal made on April 23, 2012; and (iii) an additional $1,500 in cash withdrawals made in July 2012 – including multiple withdrawals less than a week before the July filing;[9] and

c.   On or about October 16, 2012, the Campaign Committee filed a Disclosure Report for the 32 days prior to the 2012 general election that reported $497.56 in expenditures.   The Campaign Committee did not disclose (i) approximately $3,000 in ATM withdrawals in August and September 2012; (ii) a $7,000 cash withdrawal on August 31, 2012; and (iii) $3,800 in ATM withdrawals in October 2012, including a $400 withdrawal on or about October 15, 2012, the day before the Campaign Committee filing was made.

---

[8]     These withdrawals were never disclosed in any subsequent Campaign Committee Disclosure Report.

[9]     These withdrawals were never disclosed in any subsequent Campaign Committee Disclosure Report.   Notably, the July 18, 2012 filing does identify an expenditure of $3,600 in "wages" paid to MARUF ALAM on May 20, 2012, and identifies an associated check number.   However, records from the Campaign Account show no such check or associated check number.   Additionally, checks in the amount of $3,800 and $3,700 were written to MARUF ALAM (and cashed) from the Campaign Account on May 17, 2018 and January 15, 2019, respectively.

15.    Additionally, the Campaign Committee did not file a required Disclosure Report covering the period immediately prior to and immediately after the 2012 general election.   Yet Campaign Account records for October and November 2012 reflect that the Campaign Committee incurred approximately $5,000 in expenditures, including $4,950 in cash withdrawals.

16.    As noted above, the Campaign Committee filed a Disclosure Report on July 16, 2013.   Campaign Account records reflect more than $3,000 in cash withdrawals between January 1, 2013 and July 16, 2013, including $200 in cash withdrawals on July 8 and July 9, 2013.   None of these cash withdrawals was reported on the Campaign Committee's Disclosure Filings.[10]

17.    For calendar years 2014, 2015, 2016 and 2017, the Campaign Committee reported no contributions and reported total expenditures of $5,520.00.   Approximately $2,000 expenses were reported in the Campaign Committee's July 2017 Disclosure Report and consisted of four contributions to other not-for-profit or campaign entities.   An additional $3,500 in expenditures paid on December 14, 2017 were reported in January 2018.

18.    However, a review of the Campaign Account reflects that between January 2014 and December 2017 the Campaign Committee received more than $60,000 in contributions and incurred more than $50,000 in expenditures.   These expenses included

---

[10]    The Campaign Committee Disclosure Report submitted on July 16, 2013, also identifies an April 25, 2013 payment to "Maruf Alam" for $3,700 in connection with a "campaign website" and identifies the associated check number as Check 1032.   A review of the Campaign Account reflects that Check 1032 was cashed on or about July 30, 2013, in the amount of $191.75, and made out to the Board of Elections.   Further, a review of the Campaign Account does not reflect any checks payable to the defendant MARUF ALAM in 2013, nor any checks in the amount of $3,700.

substantial cash withdrawals, including more than $5,000 in withdrawals between July 2015 and January 2016 and more than $31,000 between July 2016 and June 2017.   On or about November 9, 2015 and November 13, 2015, Campaign Account records reflect that two ATM withdrawals were made at two locations in China.   Travel records reflect that the defendant MARUF ALAM traveled to China from the United States on or about November 5, 2015, and returned to the United States on or about November 19, 2015.

19.   In total, between January 2012 and January 2019, the Campaign Account records reflect approximately $80,000 in cash withdrawals, none of which have been reported to the NYSBOE.   Additionally, on May 17, 2018, a check for $3,800 was written to the defendant MARUF ALAM from the Campaign Account.   A check for $3,700 was written to ALAM from the Campaign Account on January 15, 2019.   Neither payment was reported to the NYSBOE on behalf of the Campaign Committee.

20.   In connection with the investigation, I have also reviewed the personal checking account records of the defendant MARUF ALAM (the "Alam Account"), which identify his address as the Brooklyn Residence.[11]   In connection with that review, I have identified that ALAM regularly makes large cash deposits into the Alam Account that appear inconsistent with his earnings as a New York State employee.[12]   For instance, in the three-

---

[11]   Records for the Alam Account reflect that the defendant MARUF ALAM was the only authorized signatory for the Alam Account.

[12]   As part of the investigation, I have reviewed publicly available data that identifies salaries for public employees in New York State.   One website, www.seethroughny.net, identifies the defendant MARUF ALAM's employer as the New York State Assembly and lists his annual salary from 2013 through 2018 as ranging from $21,431 (as a part time employee in 2013), to a maximum of $48,388 (as a full time employee in 2018).   As part of the investigation, I have identified what appear to be regular payroll checks and/or direct deposits in the Alam Account that appear to be ALAM's regular salary and payroll records

month period between June and August 2016, I have identified more than $30,000 in cash

deposits into the Alam Account.

      21.     Additionally, I have identified multiple instances in which cash withdrawals

from the Campaign Account occurred on or around the same date as cash deposits into the

Alam Account.  For example:

    a. On or about August 2, 2012, $500 was withdrawn from the Campaign Account at a location in Brooklyn.  On the same date, $460 in cash was deposited into the Alam Account;[13]

    b. On or about April 16, 2013, $100 was withdrawn from the Campaign Account at a location in Brooklyn.  On the same date, at the same location, $60 in cash was deposited into the Alam Account;

    c. On or about April 25, 2013, $200 was withdrawn from the Campaign Account at a location in Brooklyn.  On the same date, at the same location, $140 in cash was deposited into the Alam Account;

    d. On or about May 16, 2013, $200 was withdrawn from the Campaign Account at a location in Brooklyn.  On the same date, at the same location, $200 in cash was deposited into the Alam Account;

    e. On or about Sept. 22, 2015, a total of $800 in cash was withdrawn in two separate withdrawals at separate Brooklyn locations from the Campaign Account.  On the same date, at one of those two locations, $550 was deposited into the Alam Account;

    f. On or about Sept. 27, 2016, $3,000 in cash was withdrawn from the Campaign Account at a location in Brooklyn.  On the same date, at the same location, $2,710 in cash was deposited into the Alam Account;

    g. On or about Feb. 5, 2017, $1,000 in cash was withdrawn, in two withdrawals, from the Alam Account at a location in New York, New York.  On the same date, at the same location, $980 in cash was deposited into the Alam Account; and

    h. On or about April 2, 2017, $3,000 in was withdrawn from the Campaign Account at a location in Brooklyn.  On the same date, at the same location, $2,000 in cash was deposited into the Alam Account.

---

obtained from the New York State Comptroller.  The Alam Account records and the New York State Comptroller's records relating to ALAM are consistent with the publicly available salary data for ALAM.

[13]    Records obtained for the Alam Account do not reflect where this withdrawal occurred.

F.  Campaign Committee Donors

22.     Additionally, as part of the investigation, I have reviewed email communications in 2016 and 2017 in which the defendant MARUF ALAM was sent electronic copies of flyer and/or other promotional literature for fundraisers for the Campaign Committee to review.   These promotional materials indicated that the events were to support the Assemblyperson and that checks written at such events should be made to the Campaign Committee in the care of ALAM.   Based on the email communications I reviewed, I further believe that ALAM caused these flyers to be transmitted to potential donors to the Campaign Committee.

23.     Further, as part of the investigation, FBI agents have interviewed four individuals (the "Donors") who donated or who work for entities that donated to the Campaign Committee in 2018.

24.     In each instance, the Donors believed that his or her contribution to the Campaign Committee were being used to support the Assemblyperson's campaign.   Further, each of the Donors indicated that had he or she been informed that his or her donation was being used to fund any individual's personal expenses, he or she would not have made the contribution to the Campaign Committee.

25.     Based on the foregoing, I believe that there is probable cause to believe that in or about and between January 2012 and January 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARUF ALAM, also known as "Mitu Maruf," did knowingly and intentionally devise a scheme and artifice to defraud the Campaign Committee and contributors thereto, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing such scheme and artifice, did

transmit and cause to be transmitted, by means of wire communications in interstate

commerce, writings, to wit: electronic mail messages sent via interstate wire transmissions to

the NYSBOE attaching false Campaign Committee Disclosure Reports.

WHEREFORE, your deponent respectfully requests that an arrest warrant be

issued for the defendant MARUF ALAM, so that he may be dealt with according to law.   I

further request that this affidavit and the arrest warrant be filed under seal as disclosure of

this application would give the target of the investigation an opportunity to flee from or

evade prosecution.

_____
MATTHEW BRIGHAM
Special Agent, Federal Bureau of Investigation

Sworn to before me this
7th day of August, 2019

_____
THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK